1    MARY CARTER ANDRUES (SBN 138486)
     DOUGLAS E. HEWLETT, JR. (SBN 293438)
2    **ARENT FOX LLP**
     555 West Fifth Street, 48th Floor
3    Los Angeles, CA 90013-1065
     Telephone: 213.629.7400
4    Facsimile: 213.629.7401

5    Attorneys for Defendants MISSION CITY
     COMMUNITY NETWORK, INC. and NIK
6    GUPTA

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA          Case No. CV 12-3692 PSG (SHx)
     ex rel., MANIJEH NIKAKHTAR,
12   M.D.,                              *Assigned for all matters to the Honorable*
                                        *Philip S. Gutierrez*
13              Plaintiffs,
                                        **DEFENDANTS' NOTICE OF**
14   v.                                 **MOTION AND MOTION FOR**
                                        **ATTORNEYS' FEES AND COSTS;**
15   MISSION CITY COMMUNITY             **MEMORANDUM OF POINTS AND**
     NETWORK, INC., NIK GUPTA, &        **AUTHORITIES IN SUPPORT**
16   DOES 1 - 10,                       **THEREOF**

17              Defendants.            [Request for Judicial Notice of Exhibits
                                       1-3; [Proposed] Order; Declaration of
18                                     Mary Carter Andrues; and [Proposed]
                                       Order concurrently filed herewith]
19
                                       DATE:        May 16, 2016
20                                     TIME:        1:30 p.m.
                                       COURTROOM: 880
21
                                       Action Filed:   April 27, 2012
22                                     Trial Date:     N/A, Case Closed

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 16, 2016, at 1:30 p.m. or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Philip S. Gutierrez, United States District Judge, Central District of California, located in Courtroom 880 at 255 East Temple Street, Los Angeles, California, 90012, Defendants Mission City Community Network, Inc. and Nik Gupta ("Defendants") will and hereby do move this Court pursuant to Rule 54 of the Federal Rules of Civil Procedure, Local Rule 54-1, and 31 U.S.C. § 3730(d)(4) for an award of attorneys' fees and costs in favor of Defendants and against plaintiff United States of America *ex rel.*, Manijeh Nikakhtar, M.D. ("Relator").  The basis of this motion is that Defendants are the prevailing party as the Court granted summary judgment in their favor, and Relator's claim was clearly frivolous, clearly vexatious, or brought for the purpose of harassment.

This motion is based upon this Notice of Motion, Memorandum of Points and Authorities, Declaration of Mary Carter Andrues, and the exhibits annexed thereto, the proceedings in this matter, and such further evidence that may be introduced at or before the hearing on this motion.  This motion is made following a conference between counsel for all parties, which was conducted on March 16, 2016, pursuant to L.R. 7-3.

Dated:  March 21, 2016                **ARENT FOX LLP**


By: /s/ *Mary Carter Andrues*
MARY CARTER ANDRUES
DOUGLAS E. HEWLETT, JR.

Attorneys for Defendants MISSION
CITY COMMUNITY NETWORK, INC.
and NIK GUPTA

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS
CV 12-3692 PSG (JCX)

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................1

II.     RELEVANT BACKGROUND ...............................................................1

    A.   Plaintiffs' Complaint and First Amended Complaint .........................1

    B.   Relator's and Ms. Martinez's Deposition Admissions .......................2

    C.   The Court Granted Defendants' Motion for Summary Judgment .......3

    D.   Defendants' Motions in Limine Related to Relator's Conduct and Relator's Ex Parte Application ....................................................5

        1.   Defendants' Five Motions in Limine ............................................5

        2.   Relator's Ex Parte Application ....................................................7

    E.   Relator's Motion for Reconsideration ................................................7

    F.   Relator Has Filed Multiple FCA Lawsuits ........................................8

III.    ARGUMENT ..........................................................................................9

    A.   Defendants Are Entitled To $15,746.41 In Costs As The Prevailing Parties In This Action .........................................................9

    B.   Attorneys' Fees Should be Awarded to Defendants Because Relator's Action Was Clearly Frivolous, Clearly Vexatious, or Brought Primarily for Purposes of Harassment .................................10

        1.   Relator's Action Was Clearly Frivolous ....................................11

        2.   Relator's Action Was Clearly Vexatious or Brought Primarily for Purposes of Harassment ....................................15

            a.   Relator's Counsel Harassed and Threatened Defendants, Defendants' Attorneys, and Third-Party Witnesses ...........................................................15

            b.   Relator and Relator's Counsel Repeatedly Failed to Comply with the Court's Orders and Local Rules .........16

            c.   Relator Created New Allegations to Circumvent Summary Judgment ......................................................17

            d.   Relator Unreasonably Continued to Litigate .................17

    C.   Defendants' Attorneys' Fees Are Reasonable ...................................18

        1.   Defendants Have A Reasonable Hourly Rate ............................19

        2.   Defendants Have A Reasonable Number of Hours ....................20

        3.   The Court Should Award Expert Fees..........................................21

IV.     CONCLUSION ....................................................................................21

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

5

**Cases**

6

*U.S. ex rel Bain v. Georgia Gulf Corp.,*
   208 F. App'x 280 (5th Cir. 2006)............................................................13

7

8

*Barjon v. Dalton,*
   132 F.3d 496 (9th Cir. 1997) ................................................................19

9

10

*Chalmers v. City of Los Angeles,*
   796 F.2d 1205 (9th Cir. 1986) ..............................................................19

11

12

*Crane-McNab v. Cty. of Merced,*
   773 F. Supp. 2d 861 (E.D. Cal. 2011) ............................................ *passim*

13

14

*Fischer v. SJB–P.D. Inc.,*
   214 F.3d 1115 (9th Cir. 2000) ..............................................................18

15

16

*Galen v. County of Los Angeles,*
   477 F.3d 652 (9th Cir. 2007) ................................................................18

17

*Harris v. Maricopa Cnty. Super. Ct.,*
   631 F.3d 963 (9th Cir. 2011) ................................................................20

18

19

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983)......................................................................18, 19

20

21

*Hyde v. Midland Credit Mgmt., Inc.,*
   567 F.3d 1137 (9th Cir. 2009) ..............................................................10

22

23

*U.S. ex rel. J. Cooper & Associates, Inc. v. Bernard Hodes Grp., Inc.,*
   422 F. Supp. 2d 225 (D.D.C. 2006)..................................................15, 17

24

25

*Kerr v. Screen Extras Guild, Inc.,*
   526 F.2d 67 (9th Cir. 1975) ................................................................19

26

27

*Klee v. Nissan N. Am., Inc.,*
   No. CV1208238AWTPJWX, 2015 WL 4538426 (C.D. Cal. July 7,
   2015), aff'd (Dec. 9, 2015).............................................................19, 20

28

*U.S. ex rel. Lindenthal v. Gen. Dynamics Corp.*,
   61 F.3d 1402 (9th Cir. 1995) .................................................................9, 10

*Maag v. Wessler*,
   993 F.2d 718 (9th Cir. 1993) .....................................................................10

*Margolis v. Ryan*,
   140 F.3d 850 (9th Cir. 1998) .....................................................................12

*Mikes v. Straus*,
   274 F.3d 687 (2d Cir. 2001) ...................................................... 10, 11, 15

*Patton v. Cnty. of Kings*,
   857 F.2d 1379 (9th Cir. 1988) .............................................................11, 15

*Pfingston v. Ronan Eng'g Co.*,
   284 F.3d 999 (9th Cir. 2002) ...............................................................10, 11

*Russian River Watershed Prot. Comm. v. City of Santa Rosa*,
   142 F.3d 1136 (9th Cir. 1998) .....................................................................9

*Shah v. Cty. of Los Angeles*,
   399 F. App'x 305 (9th Cir. 2010) .........................................................14, 15

*Smith v. Banner Health Sys.*,
   621 F. App'x 876 (9th Cir. 2015) ...............................................................18

*Tutor–Saliba Corp. v. Hailey*,
   452 F.3d 1055 (9th Cir. 2006) ...................................................................11

*Van Gerwen v. Guarantee Mut. Life Co.*,
   214 F.3d 1041 (9th Cir. 2000) ...................................................................19

*Vernon v. City of Los Angeles*,
   27 F.3d 1385 (9th Cir. 1994) .....................................................................11

*Workman v. Dist. 13 Tanque Verde Unified Sch.*,
   402 F. App'x 292 (9th Cir. 2010) ...............................................................18

**Statutes**

31 U.S.C. § 3730 .........................................................................................1, 2

31 U.S.C. § 3730(d)(4) ................................................................ 9, 10, 11, 15

42 U.S.C. § 1988 ................................................................................10

False Claims Act. ..............................................................................10

**Other Authorities**

Fed. R. Civ. P.

Rule 54 ...............................................................................................1
Rule 54(d)(1)................................................................................9, 10
Rule 26 ...............................................................................................6
Rule 702 .............................................................................................6
Rule 26(e) ..........................................................................................6
Rule 37(c) ..........................................................................................6

Local Rule 16-2..................................................................................5
Local Rule 7-18 (a) and (c)................................................................7
Local Rule 16-4..................................................................................7
Local Rule 56-2............................................................................4, 14

S. Rep. No. 99-345, at 16, 1986 U.S.C.C.A.N. 5266 .......................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

A self-described "whistle-blower," relator Manijeh Nikakhtar, M.D. ("Relator") brought this lawsuit in April 2012 while she was working as a contract psychiatrist at one of defendant Mission City Community Network, Inc.'s ("MCCN") Medicare-certified Federally Qualified Health Centers ("FQHC"). The government declined to intervene, and for more than two years, MCCN and its Chief Executive Officer, Nik Gupta (collectively, "Defendants") were forced to litigate against Relator's meritless lawsuit. Defendants prevailed at summary judgment when Relator failed to identify any facts to support her False Claims Act ("FCA") allegations against Defendants.

Defendants file this Motion for Attorneys' Fees and Costs (the "Motion") pursuant to Fed. R. Civ. P. 54 and 31 U.S.C. § 3730 on the grounds that (1) Defendants are the prevailing parties in the litigation, and (2) Relator's action was frivolous, vexatious, or brought primarily for the purposes of harassment. In particular, Relator continued to litigate a meritless FCA claim since the filing of her Complaint. Moreover, Relator's and her counsel's conduct throughout this litigation, including repeatedly violating this Court's orders and the Local Rules, multiplying the litigation by filing other frivolous motions, and acting in an inappropriate and unprofessional manner towards Defendants, Defendants' counsel, and third-party witnesses, evidences the vexatious nature of Relator's lawsuit. Defendants therefore request an award of costs in the amount of $15,746.41, attorneys' fees in the amount of $635,713.62, and expert fees of $65,143.77.

## II. RELEVANT BACKGROUND

### A. Plaintiffs' Complaint and First Amended Complaint

Relator filed suit in April 2012. In her Complaint, Relator alleged that "[d]uring the course of her employment, Dr. Nik observed that Mission consistently billed Medicare for twice the amount of time for the services it rendered to its

1  patients." (Dkt. 1 ¶10).  Relator purportedly "confronted Mission's CEO, Nick

2  [sic] Gupta regarding this billing practice.  Nick {sic} Gupta responded that

3  Mission needed to make money." (*Id.*).  Relator also alleged in the Complaint that

4  she observed Defendants submitting false claims for reimbursement for medical

5  care. (*Id.* ¶11).  The government declined to intervene.  On September 23, 2013,

6  the Complaint was unsealed.  (Dkt. 15).

7          Defendants moved to dismiss the Complaint on March 4, 2014.  (Dkt. 18).

8  However, before Defendants' Motion to Dismiss was heard, Relator filed a First

9  Amended Complaint ("FAC") on March 25, 2015.  (Dkt. 22).  The FAC repeated

10  the Complaint's allegations.  Relator also added new allegations that MCCN

11  regularly created, altered, manipulated, falsified and forged "charge tickets," and

12  that "further investigation of MCCN revealed" that it "systemically {sic} engages

13  in billing fraud." (*Id.* ¶10).  The new allegations were based on the observations of

14  MCCN's office manager, Delmy Martinez.  Ms. Martinez signed an agreement with

15  Relator to receive a portion of any damages she recovered, but was not added as a

16  plaintiff to the FAC.  (Dkt. 90 at 2).

17      **B.**   **Relator's and Ms. Martinez's Deposition Admissions**

18          The parties conducted discovery and during her deposition, Relator made

19  crucial admissions which completely belied the allegations in the FAC.  Relator

20  admitted that she "does not know anything" about MCCN's billing practices, how

21  MCCN submitted claims for payment to Medicare, where MCCN's billing

22  operations were housed, and never visited MCCN's billing office.  (Dkt. 55-3 ¶¶11-

23  13).  Indeed, she admitted that she had never seen MCCN's billing during her entire

24  tenure at MCCN. (*Id.* ¶14).  Contrary to her allegations in the FAC, Relator also

25  admitted that she did not make any requests or complaints to Mr. Gupta or anyone

26  else at MCCN regarding MCCN's billing practices. (*Id.* ¶15).  Relator and her

27  counsel conceded that the allegations of fraud added to the FAC were based entirely

28  on information provided by Delmy Martinez, a former disgruntled MCCN

employee.  (*Id.* ¶16).  At her deposition, Relator  admitted that she met Ms. Martinez for the first time at a coffee shop in Pasadena, California, approximately ten days before her deposition on October 2, 2015—seven months after the FAC was filed.  (Dkt. 55-1, Ex. 2 at 31-32).  Ms. Martinez, Relator's primary witness, also revealed that she could not substantiate Relator's allegations.  Ms. Martinez admitted in her deposition that she also did not work in MCCN's billing office, never submitted any claims for payment to Medicare on behalf of MCCN, and did not know how MCCN billed Medicare.  (Dkt. 55-3 ¶¶18-21; see also, Dkt. 55-1, Ex. 6 at 91).  Ms. Martinez admitted that she did not know whether or not charge tickets were ever used to bill Medicare, and had no knowledge of whether any alleged fake doctor notes, fake charge tickets, forged doctors' names on charge tickets, altered, manipulated or falsified diagnoses on charge tickets; and the duration of a patient visit had any impact on MCCN's Medicare reimbursements.  (Dkt. 55-3 ¶¶22-23).  She also failed to identify any forged provider signatures or any forged or fraudulent entries in the charge tickets and medical records presented to her at her deposition.  (See, e.g., Dkt. 55-1, Ex. 6 at 70-145).[1]  And, Ms. Martinez admitted that she was never part of any Medicare audit while she was employed at MCCN.  (Dkt. 55-3 ¶24).

## C.   The Court Granted Defendants' Motion for Summary Judgment

On November 3, 2015, Defendants filed their Motion for Summary Judgment ("MSJ").  (Dkt. 55).  In response, Relator filed an opposition that failed "to address the vast majority of Defendants' arguments and factual assertions."[2]  (Dkt. 90 at 3).

---

[1] Dkt. 55-1, Ex. 6 at 90:16-91:2; 92:16-93:1; 98:13-99:8; 103:25-104:7; 108:12-16; 109:4-13; 109:25-110:2; 123:4-18; 136:17-137:3; 166:11-20; 173:3-11; 177:14-17; 211:2-9; 211:24-212:3; 212:17-213:1; 213:15-22; 218:1-6; 219:5-12; 233:7-16; 234:3-11; 241:15-20; 242:7-14; 243:3-8; 251:9-15; 252:2-253:19; 257:18-258:2; 258:11-21; 263:15-22; 264:11-18; 265:2-9; 266:1-6; 281:13-17; 282:3-9; 282:23-283:8; 284:7-285:4; 285:20-286:9; 286:23-287:5; 287:17-23; 288:3-9; 288:21-289:5; 289:15-21; 290:8-14; 291:9-19; 292:5-16; 293:5-12; 294:13-21.
[2] Relator improperly publicly filed sensitive patient data with her opposition.  The Court ordered that the opposition be stricken and sealed and that Relator refile with a properly redacted exhibit.  See Dkt. 78.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Relator also failed to file a statement of genuine disputes of fact as required under

2   Local Rule 56-2. (*Id.* at 1, n. 1). Instead, Relator's opposition set forth a new

3   theory of alleged FCA liability that the purportedly forged or falsified documents

4   did not comply with various federal regulations. (*Id.* at 4).

5       In resolving the MSJ, the Court first addressed the "somewhat unclear"

6   allegations contained in the FAC that MCCN submitted forged, altered, and

7   falsified documents regarding medical care to Medicare for reimbursement. (*Id.* at

8   4). The Court determined that Relator failed to provide any evidence that MCCN's

9   reimbursements were affected by false or fraudulent information. (*Id.*)

10       In particular, Relator failed "to establish that falsified or fraudulent material

11   was actually submitted to the government as a part of a claim for payment," which

12   is a required element for a FCA violation. (*Id.* at 7). Even if there were fraudulent

13   charge tickets, patient progress notes, and patient medical records, such documents

14   "had no direct bearing on Medicare reimbursement because MCCN" was

15   reimbursed based on an all-inclusive rate per visit. (*Id.*) Moreover, Relator did not

16   submit any evidence that any of the cost reports, on which reimbursement is made,

17   were based on fraud. (*Id.*) Both Relator and Ms. Martinez also admitted that they

18   had no knowledge or experience with MCCN's Medicare billing practice. In short,

19   Relator "failed to present any evidence that MCCN submitted fraudulent

20   information to the government to induce inflated Medicare payments." (*Id.* at 8).

21       As to Relator's new theories presented in her opposition, which relied

22   "almost exclusively on Relator's declaration," the Court found similar deficiencies.

23   Relator failed to provide any evidence that face-to-face medical visits did not occur,

24   or that there was a link between the purported lack of visits and the cost report

25   submitted for reimbursement. (*Id.* at 9). Relator's declaration also failed to provide

26   any evidence that the services were improperly deficient, or resulted in inflated

27   reimbursement from Medicare. Finally, Relator failed to provide any evidence that

28   MCCN certified that it was in compliance with certain regulations that Relator

cited. (*Id.* at 10). In short, Relator "offered nothing beyond mere recitations of rules and regulations and conclusory allegations of misconduct in [her] Opposition and in [her] Declaration." (*Id.*). The Court therefore granted summary judgment in favor of Defendants.

### D.   Defendants' Mo*tions in Limine* Related to Relator's Conduct and Relator's *Ex Parte* Application

#### 1.   Defendants' Five *Motions in Limine*

While Defendants' summary judgment motion was pending, the parties were required to prepare for trial. On December 11, 2015, Defendants filed five *Motions in Limine* ("MILs") to preclude Relator from improperly introducing evidence at trial. The first MIL was to preclude Relator's attorney from referring to himself as an attorney for the United States. (Dkt. 58). Prior to filing the MIL, Relator's attorney repeatedly referred to himself as an attorney for the United States in text messages, correspondence, and subpoenas to third-party witnesses, in an effort to intimidate and/or improperly influence these witnesses during the litigation. (See, *e.g.*, Dkt. 58-1 ¶¶ 2-7). Relator's counsel went so far as to copy the Medical Board of California on correspondence that he sent to one of MCCN's doctors. (*Id.*, Ex. 1). The conduct of Relator's attorney caused counsel for MCCN to send essentially a cease and desist letter and seek the assistance of the U.S. Attorney's Office to instruct Relator's counsel to refrain from such representations. (*Id.*, Ex. 5).

In an effort to avoid the necessity of filing the first MIL, Defendants' counsel asked Mr. Kayyali during the parties conference pursuant to L.R. 16-2 to refrain from claiming that he is the attorney for the United States at any time during trial, including when addressing witnesses and the jury. (Dkt. 58-7 ¶5.) Mr. Kayyali, however, refused to comply with Defendants' request, thereby necessitating the need to file the first MIL. (*Id.*)

Defendants' second MIL sought to preclude Relator from using evidence at trial that was not disclosed to the Defendants during discovery, contrary to

Relator's representations that she had previously identified all documents and witnesses on which she had relied to support her fraud allegations.  (See Dkt. 59). In addition, Relator disregarded Federal Rules of Civil Procedure 26(e) and 37(c) and continued to conduct discovery from non-parties, including issuing and serving at least one document subpoena, after the close of discovery.  (*Id.*)  This conduct required the filing of the second MIL.

Defendants filed a third MIL to preclude the Relator's purported "expert" designation and report that did not comply with Federal Rule of Civil Procedure 26 because the report was improperly prepared and signed by Relator's counsel rather than by Relator.  (Dkt. 60 at 2:22-5:3).  In addition, Relator was not qualified to provide expert testimony, and her report failed the "reliability" and "fit" requirements of Federal Rule of Evidence 702.  (*Id.* 5:4-12:22).  Relator and her counsel refused to accept these prohibitions against Relator's purported "expert" testimony, causing the need to file the third MIL.  (Dkt. 60-1 ¶7).

For the fourth MIL, Defendants asked the Court to preclude Relator from testifying about facts to which she did not have personal knowledge.  (Dkt. 61).  As discovery had made clear, Relator did not have any personal knowledge about, *inter alia*, any allegedly fraudulent billing activities by MCCN.  (*Id.* at Memo. 1). Indeed, Relator heavily relied on hearsay statements made by her attorney and Ms. Martinez to support her allegation.  Relator and her counsel nonetheless refused to adhere to the basic principles of the Federal Rules of Evidence, causing the need to file the fourth MIL.

Finally, Defendants brought a fifth MIL to preclude Relator's counsel from continuing to make repeated, unsupported accusations that defense counsel had engaged in spoliation, alteration, and concealment of evidence in this case.  (Dkt. 62).  At no time did Relator's counsel have any evidence to support these accusations and *ad hominin* attacks, as further evidenced by the fact that Relator never brought such allegations to the attention of the Court.  Because Relator and

1   her counsel refused to refrain from making these baseless accusations at trial,

2   Defendants had no choice but to file the fifth MIL.

3                    **2.    Relator's *Ex Parte* Application**

4        Pursuant to Local Rule 16-4, the parties were required to file a Memorandum

5   of Contentions of Fact on December 21, 2015.  Defendants complied with this

6   requirement, Relator did not.  (Dkt. 70).  On December 23, 2015, Relator filed an

7   *Ex Parte* Application requesting that the Court compel Defendants to meet and

8   confer and file a joint pre-trial brief.  (Dkt. 77).  Relator's untimely filing required

9   defense counsel to file an immediate response on Christmas Eve.  (Dkt. 79).

10  Moreover, as set forth in Defendants' opposition, there was no basis for *ex parte*

11  relief.  Relator's counsel failed to meet and confer prior to filing his *Ex Parte*

12  Application, there was no basis on which to bring an emergency motion, and there

13  was no requirement for the parties to file a joint pre-trial brief.  (*See id.*).

14      **E.    <u>Relator's Motion for Reconsideration</u>**

15       The Court issued its Order granting summary judgment in favor of

16  Defendants on January 4, 2016.  (Dkt. 90).  Relator filed a motion for

17  reconsideration on January 14, 2016.  (Dkt. 91).  Pursuant to local Rule 7-18 (a)

18  and (c), Relator contended that material differences in fact or law have come to

19  light that she could not have known prior to the Court's Order, and the Court failed

20  to consider material facts before making its decision.  (Dkt. 106 at 1).

21       In rejecting Relator's motion, the Court found that her arguments were for

22  the most part, "simply a rehashing of her opposition to summary judgment," which

23  was "improper."  (*Id.* at 2).  In addition, the Court outlined the exhibits it

24  considered and "found them immaterial," and found that Relator had no

25  justification for why she did not include other documents, which were available to

26  her, with her opposition to Defendants' MSJ.  (*Id.*).  The Court denied Relator's

27  motion for reconsideration finding "that Plaintiff has not shown any grounds for

28  reconsideration of the Court's January 4, 2016 summary judgment order."  (*Id.* at

1  3).  Defendants were nonetheless forced to incur the costs of responding to

2  Relator's meritless motion for reconsideration

3       On March 7, 2016, the Court entered judgment for the Defendants as the

4  prevailing parties and retained jurisdiction to hear any appropriate motions for

5  attorneys' fees and costs.  (Dkt. 107).

6  **F.       Relator Has Filed Multiple FCA Lawsuits**

7       Relator has filed multiple FCA lawsuits.  Relator has filed three parallel

8  complaints to this action against MCCN in the Los Angeles Superior Court, entitled

9  *State of Calif. ex rel. Nikakhtar v. Mission City Community Network, Inc.*, Los

10 Angeles Superior Court case no. BC550774.  (Dkt. 55-1, Ex. 5 at 49–58).  The first

11 two complaints failed to survive demurrer, and Defendants are preparing another

12 demurrer to the Second Amended Complaint.  (See Defendants' Request for

13 Judicial Notice ("RJN"), Ex. 2 at 1:23-2:5; RJN Ex. 3 at 2:4-6).  In her state case,

14 Relator allegations regarding MCCN's Medi-Cal submissions are nearly identical

15 to those she asserted in this lawsuit regarding Medicare.  (Dkt. 22; Dkt. 55-1, Ex. 5

16 at 49–58; RJN Ex. 1).  Like the United States Attorney here, the California

17 Attorney General declined to intervene in that lawsuit.

18      Relator has also filed a previous FCA lawsuit that was subsequently proven

19 meritless.  On August 19, 2011, after Relator had begun working at MCCN, she and

20 her present counsel filed a lawsuit against Gateway Hospital and Mental Health

21 Center.  Relator had served as a treating psychiatrist for only forty-two days in 2009

22 before bringing this suit.  *See United States ex rel. Nikakhtar v. Gateway Hospital*

23 *& Mental Health Center*, 2:11-cv-06842-BRO-JCG ("Gateway").  (Dkt. 55-1, Ex. 3

24 at 39-47).  The government also declined to intervene and the case was ultimately

25 dismissed with prejudice as to the Relator.  (Gateway Dkts. 11, 27).

26      At her deposition in this lawsuit, Relator stated that she is a "whistleblower"

27 and she intends to file more whistle-blower lawsuits.  (Dkt. 55-1, Ex. 2 at 17).

28

## III.   **ARGUMENT**

Defendants bring this Motion and request (1) an award of costs in the amount of $15,746.41 because Defendants are the prevailing parties in this action,[3] and (2) an award of attorneys' fees in the amount of $635,713.62, and expert fees in the amount of $65,143.77, because Relator's action was clearly frivolous, vexatious, and/or brought primarily for the purposes of harassment.

### A.   **Defendants Are Entitled To $15,746.41 In Costs As The Prevailing Parties In This Action**

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party . . . ." Fed. R. Civ. P. 54(d)(1).  Although the FCA separately provides for attorneys' fees under a different provision, the Ninth Circuit has expressly held that, even in an FCA action, the FCA's attorneys' fees provision does not supplant the usual rule that costs other than attorneys' fees should be allowed to the prevailing party as a matter of course.  *U.S. ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1413 (9th Cir. 1995).  Thus, the Court should award costs as a matter of course to a defendant that prevails in an FCA action in which the government declined to intervene and the relator prosecuted the action. *Id.*; 31 U.S.C. § 3730(d)(4); Fed. R. Civ. P. 54(d)(1); *see also Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1144 (9th Cir. 1998) ("Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party. . .").  The "district court . . . must award costs unless the prevailing party is guilty of some fault, misconduct, or default worthy of punishment." *U.S. ex rel. Lindenthal*, 61 F.3d at 1414.

Here, the government declined to intervene and the Relator continued to

---

[3] Pursuant to Local Rules 5-3 and 5-4.1, Defendants have concurrently filed form CV-59, "Application to the Clerk to Tax Costs."  Defendants have included costs in this Motion pursuant to the Court's retention of jurisdiction to hear the motion for attorneys' fee and costs.  (Dkt. 107).

1  prosecute this action.  After the Relator was unable to marshal any evidence of a

2  dispute of material fact that Defendants had submitted fraudulent claims to

3  Medicare for reimbursement, the Court granted Defendants' MSJ against Relator's

4  one and only cause of action.  The Court then entered judgment on the docket for

5  the Defendants as the prevailing parties.  (*See* Dkt. 90).  Accordingly, Defendants

6  hereby request an award of costs in the amount of $15,746.41, to which they are

7  entitled.  *U.S. ex rel. Lindenthal*, 61 F.3d at 1413; Fed. R. Civ. P. 54(d)(1).

8  **B.    Attorneys' Fees Should be Awarded to Defendants Because**

**Relator's Action Was Clearly Frivolous, Clearly Vexatious, or**

9  **Brought Primarily for Purposes of Harassment**

10  The FCA provides for an award of reasonable attorneys' fees for the

11  prevailing party if "the court finds that the claim of the [*qui tam* relator] bringing

12  the action was clearly frivolous, clearly vexatious, or brought primarily for

13  purposes of harassment." 31 U.S.C. § 3730(d)(4).  "Any of these three conditions

14  is sufficient for an award of attorneys' fees." *Mikes v. Straus*, 274 F.3d 687, 704–

15  05 (2d Cir. 2001).  The FCA standard "tracks our formulation as to when fees are

16  appropriate under 42 U.S.C. § 1988 to a prevailing defendant." *Pfingston v. Ronan*

17  *Eng'g Co.*, 284 F.3d 999, 1005-06 (9th Cir. 2002).  Under § 1988, a court may

18  grant attorneys' fees "under the limited circumstances where the action is frivolous,

19  unreasonable, or without foundation." *Maag v. Wessler*, 993 F.2d 718, 719 (9th

20  Cir. 1993).  "As such, § 1988 cases are instructive in deciding whether fees are

21  appropriate under the False Claims Act." *Pfingston*, 284 F.3d 999, 1005-06 (9th

22  Cir. 2002).

23  Congress added the FCA attorneys' fee provision "in order to create a strong

24  disincentive and send a clear message to those who might consider using the private

25  enforcement provision of this Act for illegitimate purposes." *Hyde v. Midland*

26  *Credit Mgmt., Inc.*, 567 F.3d 1137, 1140 (9th Cir. 2009) (quoting S. Rep. No. 99-

27  345, at 16, 1986 U.S.C.C.A.N. 5266, 5294).  Congress thus "encourages courts to

28  strictly apply this provision in frivolous or harassment suits as well as any

1   applicable sanctions available under the Federal Rules of Civil Procedure." *Id.*

2   Nonetheless, "fees are not awarded routinely or simply because the defendant

3   succeeded." *Crane-McNab v. Cty. of Merced*, 773 F. Supp. 2d 861, 880 (E.D. Cal.

4   2011) (citing *Patton v. Cnty. of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988)).  The

5   "Ninth Circuit repeatedly has recognized that attorney's fees [] should only be

6   awarded to a defendant in exceptional circumstances" and courts must "resist the

7   understandable temptation to engage in post hoc reasoning by concluding that,

8   because a plaintiff did not ultimately prevail, his action must have been

9   unreasonable or without foundation." *Id.* (citations omitted).  Such exceptional

10  circumstances exist here.

### 1.   Relator's Action Was Clearly Frivolous

12  Under Section 3730(d)(4), "an action is 'clearly frivolous' when 'the result is

13  obvious or the [relator]'s arguments of error are wholly without merit.'" *Pfingston*,

14  284 F.3d at 1006 (quoting *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th

15  Cir. 1994).  A plaintiff's claims are frivolous when they lack a factual and legal

16  basis at the outset of the litigation.  *Tutor–Saliba Corp. v. Hailey*, 452 F.3d 1055,

17  1061 (9th Cir. 2006) (affirming the district court's holding that plaintiff's

18  constitutional claims were frivolous when they "lacked a factual and legal basis");

19  *see also Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. 2001) ("A claim is frivolous

20  when, viewed objectively, it may be said to have no reasonable chance of success,

21  and present no valid argument to modify present law.").

22  Here, the record demonstrates that Relator's single FCA claim was frivolous

23  from the outset of filing the Complaint.  In her deposition, Relator stated that she

24  had never worked at a FQHC, and did not know that MCCN was a FQHC.  (Dkt.

25  55-1, Ex. 2 at 18:5-19:13).  She also had no knowledge about the manner in which

26  FQHCs are reimbursed using an all-inclusive rate.  (*Id.*).  Yet, MCCN's website

27  plainly states that it "received … Federally Qualified Health Center status in

2007."[4]  The regulations governing FQHCs and the manner in which they are reimbursed also are readily available.  (See Dkt. 55 at 2:18-5:15; Dkt. 90 at 5).

Relator made allegations in her Complaint that were later contradicted by her own testimony during discovery.  For example, Relator admitted that she never visited MCCN's billing center and had no knowledge of MCCN's billing practices or how MCCN submitted claims to Medicare.  (Dkt. 55-3 ¶¶12-15; Dkt. 55-1, Ex. 2 at 30).  These facts are contrary to the Complaint allegations that she "observed that Mission consistently billed Medicare for twice the amount of time for the services it rendered to its patients" and "observed Defendants submitting false claims for reimbursement for medical care."  (Dkt. ¶¶10-11).  And despite her allegations about Mr. Gupta in the FAC, Relator admitted in her deposition that she *did not* make any requests or complaints to Mr. Gupta or anyone else at MCCN regarding MCCN's billing practices.  (Dkt. 55-3 ¶15).  Plaintiff had available to her all of the relevant facts and legal standards prior to filing her Complaint.  She was required to make "a reasonable inquiry into the applicable facts and law before filing [her] case [and she] would have discovered the insufficiency of [her] claim."  *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998) (affirming award of attorneys' fees where plaintiffs' "conspiracy claim was meritless and frivolous").  However, she failed to make the reasonable inquiry here in which she would have discovered that she could not establish a FCA claim because there was no link between any purported fraudulent documents and the all-inclusive rate MCCN received as reimbursement from Medicare.  Accordingly, because Relator "knew or should have known" that her claim "lacked merit at the outset of litigation," Defendants are entitled to recover attorneys' fees. *See Crane-McNab*, 773 F. Supp. 2d at 882.

However, rather than not filing or later dismissing her Complaint, particularly in light of the government's decision to not intervene, Relator unreasonably continued to litigate.  She filed the FAC after Defendants moved to

---

[4] http://www.mccn.org/index.html.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

dismiss the Complaint. However, Relator again knew, or should have known, that the FAC was flawed in the same manner as the Complaint. Despite Relator's later admissions that she had no knowledge of MCCN's billing practices or its status as an FQHC, she filed her FAC re-alleging verbatim the allegations of her original Complaint, including that she "observed" MCCN's improper billing and that she confronted Mr. Gupta about the practice. (Dkt. 22 ¶10). Relator simply reiterated her frivolous claim. *See, e.g.*, *U.S. ex rel Bain v. Georgia Gulf Corp.*, 208 F. App'x 280, 283 (5th Cir. 2006) (finding an amended complaint frivolous where plaintiff was on notice that original complaint lacked the heightened pleading requirements and failed to meet jurisdictional and procedural prerequisites).

Moreover, Relator added allegations to the FAC that she knew, or reasonably should have known, lacked merit. The new allegations were based on the purported observations of MCCN's office manager, Delmy Martinez, who signed an agreement with Relator to receive a portion of any damages she recovered, but was not added as a plaintiff to the FAC. (Dkt. 90 at 2). Based on Ms. Martinez's deposition, Relator and her attorney made no effort to conduct any due diligence about the allegations of fraud attributed to Ms. Martinez. (See, e.g., Dkt. 55-3 ¶¶18-25). In addition, Relator admitted during her deposition that she only met Ms. Martinez at a coffee shop in Pasadena, California, approximately ten days before her deposition on October 2, 2015. (Dkt. 55-1, Ex. 2 at 31-32).

Notwithstanding, Relator added the new allegations to the FAC that MCCN regularly created, altered, manipulated, falsified and forged "charge tickets," and that "further investigation of MCCN revealed" that it "systemically {sic} engages in billing fraud." (Dkt. 22 ¶10). However, as with the original allegations, the additional allegations were disproven with facts. Ms. Martinez failed to identify a single fraudulent or altered document during her deposition. (See e.g., Dkt. 55-1, Ex. 6 at 70-145). She further testified that she did not work in MCCN's billing office, never submitted any claims for payment to Medicare on behalf of MCCN,

did not know how MCCN billed Medicare, did not know whether or not charge tickets were ever used to bill Medicare, and had no knowledge of whether any alleged fake doctor notes, fake charge tickets, forged doctors' names on charge tickets, altered, manipulated or falsified diagnoses on charge tickets; and the duration of a patient visit had any impact on MCCN's Medicare reimbursements. (Dkt. 55-3 ¶¶18-23).

Relator should have made a reasonable inquiry as to whether Ms. Martinez had any knowledge that would have established the basis for a FCA claim. She failed to do so. Instead, Relator continued to litigate her frivolous claims by including these new allegations that Relator knew or should have known lacked merit at the outset of the litigation. Then upon learning these facts at Ms. Martinez's deposition, Relator continued to prosecute her meritless claim.

The frivolousness of Relator's claims were further substantiated at during the summary judgment proceedings. As an initial matter, Relator filed an opposition that failed "to address the vast majority of Defendants' arguments and factual assertions." (Dkt. 90 at 3). Relator also failed to file a statement of genuine disputes of fact as required under Local Rule 56-2. (*Id.* at 1, n. 1). "Forcing defendant to . . . to incur expenses presenting evidence that plaintiffs did not even attempt to rebut is the very definition of frivolity." *Crane-McNab*, 773 F. Supp. 2d at 881.

Based on the lack of evidence presented by the Relator creating a genuine dispute of material fact, the Court ultimately determined that Relator failed "to establish that falsified or fraudulent material was actually submitted to the government as a part of a claim for payment," which is a required element for a FCA violation. (Dkt. 90 at 7). The Court also found that Relator's new theories in opposing summary judgment were deficient, where Relator "offered nothing beyond mere recitations of rules and regulations and conclusory allegations of misconduct in [her] Opposition and in [her] Declaration." (*Id.* at 10). *See, e.g.,*

*Shah v. Cty. of Los Angeles*, 399 F. App'x 305, 307 (9th Cir. 2010) (noting that Plaintiff's "inability to present a single piece of evidence supporting his claims of discrimination and retaliation undermine his assertion that his claims were not frivolous"). Under such circumstances, an award of attorneys' fees is appropriate.

### 2.   Relator's Action Was Clearly Vexatious or Brought Primarily for Purposes of Harassment

Relator's action also was clearly vexatious or brought primarily for the purposes of harassment. "An action is 'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." *Id.* (citing *Patton v. County of Kings*, 857 F.2d 1379, 1381 (9th Cir.1988). Section 3730(d)(4) does not require any finding of subjective bad faith; an attorneys' fees award is proper when the plaintiff's case was "objectively vexatious." *Mikes v. Straus*, 274 F.3d at 705.

The D.C. District Court had listed examples of evidence of vexatiousness or an intent to harass on the part of a plaintiff, such as: (1) actions that deliberately delay the proceedings, (2) attempts to relitigate a previously decided claim against the same defendant, (3) the raising of new allegations in an effort to circumvent the arguments in a defendant's motion, (4) and the inclusion of counts for which the available evidence defeats any inference of a false claim. *U.S. ex rel. J. Cooper & Associates, Inc. v. Bernard Hodes Grp., Inc.*, 422 F. Supp. 2d 225, 238 (D.D.C. 2006) (internal citations omitted). Here, the manner in which Relator has litigated this case is clearly vexatious and constituted harassment.

### a.   Relator's Counsel Harassed and Threatened Defendants, Defendants' Attorneys, and Third-Party Witnesses

Relator harassed the Defendants, Defendants' attorneys, and third-party witnesses during the course of litigation. Relator's counsel, in numerous email, phone, and letter correspondence, repeatedly and improperly accused Arent Fox LLP attorneys and Defendants of misconduct, including concealing evidence. (Dkt.

62 at 1:11-19 (accusing Defendants' counsel of "brazen discovery abuse and criminal conspiracy with Gupta to obfuscate incriminating evidence" and "hide incriminating records")).  Relator's counsel also repeatedly levied threats against Arent Fox LLP, Defendants, and non-party witnesses, to take various forms of action against them, including threatening to move for sanctions and threatening to file a restraining order.  (Dkt. 58-1¶¶ 2-7; Dkt. 62-1, Exs. 1-2).

Further, Relator's counsel repeatedly held himself out as the attorney for the United States of America when communicating with non-party witnesses, in an attempt to intimidate and harass them into complying with his requests.  (Dkt. 58 at 3; Dkts. 58-1, Exs. 1-4).  Not only were Relator's counsel's actions improper and vexatious, but they forced Defendants to have to interview several witnesses to ascertain the nature and scope of Relator's counsel's misrepresentations, correspond with Relator's attorney in an effort to stop his improper representations, contact the U.S. Attorney's Office to instruct counsel to refrain from such misrepresentations, and forced Defendants to file a motion *in limine* after Relator's counsel refused to refrain from referring to himself as counsel for the United States of America.  (Dkt. 58 at 4; Dkt. 58-7 ¶5).

### b.  Relator and Relator's Counsel Repeatedly Failed to Comply with the Court's Orders and Local Rules

Relator and her counsel also repeatedly failed to comply with the Court's Orders and the Local Rules during the course of litigation, including the following:

- failed to "address the vast majority of Defendants' arguments and factual assertions" in her opposition to Defendants' MSJ (Dkt. 90 at 3, 10);

- failed to cite to the record and a single case in her opposition to Defendants' MSJ, thereby wasting scarce judicial time and resources and burdening the Court in its determination of Defendants' MSJ (see generally Dkt. 80);

- failed to submit a separate statement of genuine disputes and uncontroverted facts (Dkt. 90 at 1, n.1);

- filed multiple docket entries that had to be stricken from the record for failure to comply with the Court's Orders, Local Rules, or required Court notices to address filing deficiencies, including publicly filing sensitive patient medical data (Dkts. 63, 65, 66, 67, 68, 69, 83, 96);

- improperly filed an *Ex Parte* Application for Order Compelling [Defendants'] Counsel to Confer and File Joint Pre-Trial Brief (Dkt. 77);

- improperly served a subpoena on the Custodian of Records for Bell Gardens Manor nearly a month after the close of discovery and demanding the production of documents within five (5) days (Dkt. 59); and

- improperly filed a frivolous motion for reconsideration (Dkt. 106).

Relators' failure to comply with the Court's orders and the Local Rules wasted scarce judicial time and resources and otherwise evinced a pattern of vexatious filings.

### c.  Relator Created New Allegations to Circumvent Summary Judgment

Relator improperly changed the theory of her case after the close of discovery and after Defendants filed their MSJ.  Relator litigated her entire case, until filing her opposition to Defendants' MSJ, as an FCA cause of action based on the theory "that MCCN forged or falsified documents that were used to procure Medicare reimbursements."  (Dkt. 90 at 4).  Relator then "alter[ed] course" to assert a theory based not on Relator's personal observations and experiences at MCCN, but instead based on her review of MCCN medical records purportedly as a Medicare billing and federal regulations expert.  (*Id.*; see generally Dkt. 80).  She created a new theory for her claim in an effort to circumvent the harmful facts that (1) the allegations in her FAC were proven false by her own admissions in her deposition, and (2) her theory of liability based on allegedly forged charge tickets could not give rise to FCA liability, as Defendants argued in their MSJ.  Relator's *post hoc* creation of a new theory in order to circumvent the arguments Defendants made in their MSJ was improper and vexatious.  *See U.S. ex rel. J. Cooper &*

1   *Assocs. Inc.*, 442 F. Supp. 2d at 238.

2   **d.   Relator Unreasonably Continued to Litigate**

3   The Ninth Circuit also has affirmed attorneys' fee awards where plaintiffs

4   have continued to "litigate claims even after it became obvious that those claims

5   were meritless." *Workman v. Dist. 13 Tanque Verde Unified Sch.*, 402 F. App'x

6   292, 293 (9th Cir. 2010) (citing *Galen v. County of Los Angeles*, 477 F.3d 652, 653,

7   666–68 (9th Cir. 2007) (affirming attorneys' fee award because, "based on the

8   evidence acquired during discovery, it became obvious that the plaintiff could not

9   meet his burden of demonstrating defendant's liability" (citations omitted))).  For

10  example, a baseless motion for reconsideration after summary judgment, which

11  necessarily requires a response from the defendant, is unreasonable.  *See Smith v.*

12  *Banner Health Sys.*, 621 F. App'x 876, 882 (9th Cir. 2015).

13  Here, Relator continued to litigate from her meritless initial Complaint

14  through her equally meritless motion for reconsideration—even after learning

15  through discovery that her allegations lacked all merit.[5]  Such conduct is

16  unreasonable.   Moreover, as a self-professed "whistleblower," Relator intends to

17  file additional FCA cases in the future.  (Dkt. 55-1, Ex. 2 at 17:12-21). Based on

18  her track record thus far, including filing an state FCA case on the same facts

19  alleged in this matter, Relator will file such additional lawsuits regardless of merit.

20  Accordingly, an award of attorneys' fees is appropriate to compensate Defendants

21  in defending this meritless matter while also drawing to Relator's attention the fact

22  that such meritless lawsuits are not without cost.

23  **C.   Defendants' Attorneys' Fees Are Reasonable and Expert Costs**
    **Should be Awarded**

24  To determine a reasonable attorneys' fee in this case, the court must calculate

25  the "lodestar" amount by taking the number of hours reasonably expended on the

26

27  _____
    [5] Mediation was held on November 13, 2015, after Defendants filed the MSJ on

28  November 3, 2015.  Relator had ample opportunity to assess the merits of
    Defendants' MSJ and could have reached a settlement through mediation rather
    than continuing her meritless litigation.  (See Dkt. 57).

1  litigation and multiplying it by a reasonable hourly rate. *Fischer v. SJB–P.D. Inc.*,

2  214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424,

3  433 (1983)).  The fee applicant bears the burden of documenting the appropriate

4  hours expended in the litigation and must submit evidence in support of those hours

5  worked. *See Hensley*, 461 U.S. at 437.  The district court may exclude from the

6  initial fee calculation hours that were "excessive, redundant, or otherwise

7  unnecessary." *Hensley*, 461 U.S. at 434.

8          The court then may adjust the lodestar upward or downward using a

9  "multiplier" based on factors not subsumed in the initial calculation of the lodestar.[6]

10 *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

11 "The lodestar amount is presumptively the reasonable fee amount, and thus a

12 multiplier may be used to adjust the lodestar amount upward or downward only in

13 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record

14 and detailed findings by the lower courts that the lodestar amount is unreasonably

15 low or unreasonably high." *Id.* (citations omitted).

16         **1.     Defendants Have A Reasonable Hourly Rate**

17         The reasonable hourly rate is based on the experience, skill, and reputation of

18 the attorney requesting fees. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210

19 (9th Cir. 1986).  "Determination of a reasonable hourly rate is not made by

20 reference to rates actually charged the prevailing party. . . [but] the community for

21 similar work performed by attorneys of comparable skill, experience, and

22 reputation." *Id.*  The relevant community is generally the forum in which the court

23 

24 

25 

26 

27 

28 

[6] These factors include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).  *Crane-McNab*, 773 F. Supp. 2d at 882, n.8.  The contingent nature of the fee agreement has been rejected by the Supreme Court. *Id.*

sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  A recent case in the Central District of California found that hourly rates ranging from $370 to $695 are reasonable.  *See, e.g.*, *Klee v. Nissan N. Am., Inc.*, No. CV1208238AWTPJWX, 2015 WL 4538426, at *13 (C.D. Cal. July 7, 2015), aff'd (Dec. 9, 2015) (listing other cases with similar rates).

Here, Defendants seek hourly rates as follows:

- Partner Mary Carter Andrues, a rate of $645 per hour for 2014, and $675 per hour for 2015.  Ms. Andrues has practiced since 1988.

- Partner Thomas E. Jeffrey, a rate of $630 per hour for 2014, and $660 per hour in 2015.  Mr. Jeffrey has practiced since 1986.

- Counsel Susana H. Murphy, a rate of $555 per hour for 2015.  Ms. Hathaway has practiced since 1996.

- Associate Paul C. Rigali, a rate of $415 per hour for 2014, and $445 per hours in 2015.  Mr. Rigali has practiced since 2008.

- Associate Douglas E. Hewlett, a rate of $325 per hour in 2015.  Mr. Hewlett has practiced since 2013.

- Paralegal Susan M. Gordon, a rate of $255 per hour for 2014, and $270 per hour for 2015.

- Practice Technology Coordinator Eric Ngo, a rate of $295 per hour.

- Practice Technology Coordinator Noel Velasco, as rate of $230 per hour.

- Defendants are not seeking attorneys' fees for multiple associates and paralegals.

Declaration of Mary Carter Andrues ("Andrues Decl.") ¶¶9-10.  The above listed hourly rates fall below the range of rates found reasonable within the Central District of $370 to $695 per hour.  *See Klee*, 2015 WL 4538426, at *13.  Accordingly, the Court should find Defendants' requested hourly rates reasonable.

## 2.   **Defendants Have A Reasonable Number of Hours**

Defendants have submitted detailed billing for the work performed in this case.  Ms. Andrues worked 343.1 hours; Mr. Jeffrey worked 19.1 hours; Ms. Murphy worked 42.8 hours; Mr. Rigali worked 563.2 hours; Mr. Hewlett worked

1   160.0 hours; Ms. Gordon worked 138.4 hours; Mr. Ngo worked 3.2 hours, and Mr.

2   Velasco worked 3.4 hours. (Andrues Decl. ¶9). Moreover, there was only one

3   claim brought by Relator, so there is no need identify and subtract fees related to

4   work for non-frivolous claims. *Cf. Harris v. Maricopa Cnty. Super. Ct.*, 631 F.3d

5   963, 973 (9th Cir. 2011). The work on this case related to conducting discovery,

6   preparing the motion for summary judgment, responding to Relator's *Ex Parte*

7   Application and motion for reconsideration, and preparing this motion for fees and

8   costs. (Andrues Decl. ¶6). Given the complexity of the FCA case, the hours spent

9   were reasonable. (*Id.* ¶14).

10   Defendants are not seeking reimbursement for fees of several other associates

11   and paralegals who also worked on this matter. (*Id.* ¶10). In addition, Defendants

12   have separated out all of the fees and costs for the California False Claims Act case

13   Relator brought in state court and is not requesting any reimbursement for

14   attorneys' fees as related to the state case. (*Id.* ¶7). Accordingly, there are no

15   excessive, redundant, or otherwise unnecessary hours included in the request for

16   fees. In short, Defendants are requesting attorneys' fees based on a reasonable

17   number of hours, in the total amount of $635,713.62.

18   **3.    The Court Should Award Expert Fees**

19   As set forth above, the Relator's litigation was frivolous, vexatious, or

20   brought for the purposes of harassment. As such, this Court should award expert

21   costs in the amount of $65,143.77. (See Andrues Decl. ¶43). Defendants' expert

22   fees are not included in the bill of costs. However, an award of the expert fees is

23   appropriate to reimburse Defendants for the costs associated with defending against

24   a meritless claim. *See, e.g., Rogerson Aircraft Corp. v. Fairchild Indus., Inc.*, 632

25   F. Supp. 1494, 1507-09 (C.D. Cal. 1986) (awarding expert fees where the losing

26   party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons"). In

27   addition, the costs associated with Defendants' expert is reasonable, given the

28   complexity of the issues presented in this case, and the expert's time and skill. (See

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

Andrues Decl. ¶¶14, 43).  Accordingly, the Court should award Defendants' the expert fees.

## IV.  **CONCLUSION**

As the prevailing parties, Defendants are entitled to costs in the amount of $15,746.41.  Moreover, Relator filed her lawsuit and forced Defendants to litigate against her meritless claim for more than two years despite the fact that she had no evidentiary basis to support her claim.  She and her counsel also acted in a vexatious and harassing manner to Defendants, Defendants' counsel, and third-parties.  Accordingly, Defendants respectfully request that the Court grant is motion for an award of attorneys' fees in the amount of $635,713.62 and expert fees of $65,143.77.

Dated:  March 21, 2016                    **ARENT FOX LLP**

By: /s/ *Mary Carter Andrues*
MARY CARTER ANDRUES
DOUGLAS E. HEWLETT, JR.

Attorneys for Defendants MISSION CITY COMMUNITY NETWORK, INC. and NIK GUPTA